. .ITED STATES DISTRICT COUR'.
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNE MARIE LARA AND ELVIN LARA, INDIVIDUALLY AND AS PARENTS AND BEST FRIENDS OF BABY (BOY) JOSE ANGEL LARA, | ) ) ) ) |
| | CIVIL ACTION |
| Plaintiff, | No. |
| v. | |
| PATRICIA GRABAUSKAS, C.N.M., OLGA CORDERO, R.N., EAST BOSTON NEIGHBORHOOD HEALTH CENTER, LAUREN E. HANLEY, M.D., ERIN E. TRACEY, M.D., AND RONALD E. IVERSON, M.D., | ) MAGISTRATE JUDGE ) ) ) ) ) ) |
| Defendants. | ) ) |

05 1 043 RGS

RECEIPT #
AMOUNT $ N/A
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE 5 18 05

## NOTICE OF REMOVAL

The defendants, Olga Cordero, R.N. and East Boston
Neighborhood Health Center, by their attorneys, hereby give
notice pursuant to 28 U.S.C. § 2679(d)(2) of their removal of
this lawsuit to the United States District Court for the District
of Massachusetts. As grounds for the removal, the defendant Olga
Cordero, R.N., states that she is an employee of the United
States being sued for alleged violations of state tort law, and
therefore entitled to remove the action pursuant to 28 U.S.C. §
2679(d)(2).

The remaining ⎽aims against the defendan⎼ the East Boston Neighborhood Health Center, is also being removed pursuant to 28 U.S.C. § 1441(c).

Respectfully submitted

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

Rayford A. Farquhar
Assistant U.S. Attorney
1 Courthouse Way
Suite 9200
Boston, MA 02210
(617) 748-3284

## CERTIFICATE OF SERVICE

Suffolk, ss

Boston, Massachusetts
May 18, 2005

I hereby certify that a true copy of the above document was served upon all counsel of record including:

Max Bortem, M.D., Esq.
Gorovitz & Bortem, Esq.
395 Totten Pond Road
Suite 401
Waltham, MA 02450

Rayford A. Farquhar
Assistant U.S. Attorney

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                      SUPERIOR COURT
                                          CIVIL ACTION NO. 04 -4802

| | |
|---|---|
| ANNE MARIE LARA, | **FIRST** |
| as ADMINISTRATRIX OF THE ESTATE of BABY (boy) | |
| JOSE ANGEL LARA | **AMENDED** |
| | |
| Plaintiff | **COMPLAINT** |
| | |
| v. | |
| | **and** |
| PATRICIA GRABAUSKAS, C.N.M.., | |
| OLGA CORDERO, R.N. | |
| EAST BOSTON NEIGHBORHOOD HEALTH CENTER | |
| LAUREN E. HANLEY, M.D. | **DEMAND FOR** |
| ERIN E. TRACY, M.D., and | |
| RONALD E. IVERSON, M.D. | |
| | **JURY TRIAL** |
| | |
| Defendants | |

## OVERVIEW

This Complaint represents claims for medical malpractice
against Defendants, Patricia Grabauskas, C.N.M. ("Nurse
Grabauskas"), Olga Cordero, R.N. ("Nurse Cordero"), East Boston
Neighborhood Health Center ("Health Center"), Lauren E. Hanley,
M.D. ("Dr. Hanley"), Erin E. Tracy, M.D. ("Dr. Tracy") and
Ronald E Iverson, M.D. ("Dr. Iverson").

Mrs. Anne Marie Lara ("Mrs. Lara") was a patient who became
pregnant after trying to conceive for approximately 10 years.
Mrs. Lara was a prenatal patient at the Health Center and was
provided prenatal care by Nurse Grabauskas and Nurse Cordero
between November 2002 and May 2003 and thereafter.  Mrs. Lara

was diagnosed to be a diabetic patient during her pregnancy and, notwithstanding her high risk status, her entire prenatal care was provided by Nurses Grabauskas and Cordero. Mrs. Lara had several blood tests that were considered abnormal but was not referred to be cared for by an obstetrician and/or a perinatologist specializing in high risk obstetrics. During Mrs. Lara's entire prenatal care, she was never referred for a high risk perinatal evaluation with a perinatologist or a physician specializing in diabetic gestations.

On May 27, 2003, Mrs. Lara was evaluated at the Health Center and, because of fetal heart abnormalities, was referred to the Massachusetts General Hospital where she was diagnosed as carrying an Intrauterine Fetal Stillborn. Labor was induced on May 28, 2003 and Mrs. Lara delivered Jose Angel as a stillbirth the same day.

As a direct consequence of the negligence of the Defendants in the instant case, Mr. and Mrs. Lara incurred the tragic loss of their baby boy Jose Angel Lara at approximately 38 weeks of gestation and his brother Elvin Lara, Jr. has  tragically lost his baby brother.

## JURISDICTIONAL ALLEGATIONS
### AND IDENTIFICATION OF PARTIES

1.    The Plaintiff is Anne Marie Lara, the duly appointed Administratrix of the Estate of Jose Angel Lara, by decree of Suffolk (Mass.) Probate and Family Court Docket No. 05P0091-AD1 entered on March 9, 2005.  The Administratrix

2

resides at 174 Faywood Avenue, East Boston, County of
Suffolk, Commonwealth of Massachusetts, 02128;

2.   The Defendant, Patricia Grabuaskas, C.N.M. ("Nurse
     Grabauskas"), was at all times relevant to this complaint,
     a Certified Nurse Midwife licensed to practice nursing and
     medicine in the Commonwealth of Massachusetts with a
     business address at 10 Grove Street, East Boston, County of
     Suffolk, Commonwealth of Massachusetts 02128;

3.   The Defendant, Olga Cordero, R.N. ("Nurse Cordero"), was at
     all times relevant to this complaint, a Registered Nurse
     licensed to practice nursing and medicine in the
     Commonwealth of Massachusetts with a business address at 10
     Grove Street, East Boston, County of Suffolk, Commonwealth
     of Massachusetts 02128;

4.   The Defendant, East Boston Neighborhood Health Center
     ("East Boston Health Center") has a principal place of
     business at 10 Grove Street, East Boston, County of
     Suffolk, Massachusetts 02128 was, at all times relevant to
     this complaint, a Health Center licensed to provide medical
     services and surgical services in the Commonwealth of
     Massachusetts.

5.   The Defendant, Lauren E. Hanley, M.D. ("Dr. Hanley"), was at
     all times relevant to this complaint, a Physician licensed
     to practice medicine in the Commonwealth of Massachusetts
     with a business address at 55 Fruit Street, Boston, County
     of Suffolk, Commonwealth of Massachusetts 02114;

6.   The Defendant, Erin E. Tracy, M.D. ("Dr. Tracy"), was at all
     times relevant to this complaint, a Physician licensed to
     practice medicine in the Commonwealth of Massachusetts with

3

a business address at 55 Fruit Street, Boston, County of
Suffolk, Commonwealth of Massachusetts 02114;

7.    The Defendant, Ronald I Iverson, M.D.("Dr. Iverson"), was
at all times relevant to this complaint, a Physician
licensed to practice medicine in the Commonwealth of
Massachusetts with a business address at 55 Fruit Street,
Boston, County of Suffolk, Commonwealth of Massachusetts
02114;

## COMMON OPERATIVE FACTS

8.    Mrs. Lara was diagnosed to be in the early stages of
pregnancy on November 13, 2002 by a nurse practitioner
working at the East Boston Health Center. Her last
menstrual period was uncertain because of irregular
menstrual cycles. A positive HCG test was diagnosed on
November 5, 2002.

9.    On November 14, 2002, Mrs. Lara was again evaluated by
Angela Acosta, R.N., a nurse employed by East Boston Health
Center and was given an appointment to see Nurse Cordero on
November 19, 2002.

10.   On November 19, 2002 Mrs. Lara had her first prenatal visit
at the East Boston Health Center with Nurse Cordero.
Obstetrical laboratory tests were obtained; no fetal heart
tones were diagnosed at the time. Nurse Cordero ordered a
pelvic ultrasound. Mrs. Lara was weighted at 238 lbs. and
the blood pressure was measured at 138/82.

11.   An obstetrical ultrasound obtained on November 25, 2002 at
the East Boston Health Center diagnosed a single, living,

4

intrauterine pregnancy with an average gestational age
equaling approximately 11.3 weeks in duration.

12.  A pelvic ultrasound obtained on December 2, 2002 at the
     Massachusetts General Hospital diagnosed a single
     intrauterine gestational sac containing a sonographically
     normal fetus with a normal heart rate. Biometry was
     reported as consistent with 13 weeks and 1 day and Mrs.
     Lara was given an EDC (expected day of Confinement) of June
     8, 2003.

13.  On December 17, 2002, Mrs. Lara presented for another
     prenatal visit to the East Boston Health Center. She was
     diagnosed to be 15.3 weeks pregnant, her weight was
     measured at 248 lbs., her blood pressure was 130/80. A
     complete physical examination was performed. A second
     pelvic ultrasound was ordered and an appointment given for
     Mrs. Lara to be evaluated by Nurse Grabauskas (CNM,
     Certified Nurse Midwife) for January 7, 2003.

14.  On December 23, 2002, Mrs. Lara had her blood AFP (alpha
     feto-protein) taken at approximately 16.1 weeks gestation.
     A repeat ultrasound was ordered.

15.   On January 6, 2003, a repeat pelvic ultrasound obtained at
     the Massachusetts General Hospital confirmed a single
     active intrauterine fetus; biometry was consistent with an
     18.1 weeks intrauterine gestation.

16.  On January 7, 2003, Mrs. Lara was evaluated at the East
     Boston Health Center for a routine prenatal visit. The
     examiner reported the following:

          (a) "Feels well, had sono and AFP yesterday. Discussed
          diet and possible gest DM. Will screen next week with
          1 hr GTT and told pt she would be screened again at 28

                                   5

weeks if this is nl. If this test is abnl she would be
tried on diet for regulation of gest DM pt
understands. rtc in 4 weeks."

17.   On February 5, 2003, Mrs. Lara was evaluated at the East
      Boston Health Center for a prenatal follow up visit; the
      examiner reported the following:

      (a) "Denies vag bleeding reports + fetal kicking more
      at night. c/o vag itching had a first trim resolved w
      Terazol req rf on Terazol 7 given. Rev PTL
      precautions, warnings signs FM. Rev prior lab and u/s
      report PPD today, has appt w Nutrition in March. RTc
      in 4 weeks w CNM/PRN

18.   On March 11, 2003, Mrs. Lara was evaluated at the East
      Boston Health Center for a routine prenatal visit; the
      examiner reported the following:

      (a) "Feels well, reports active baby. Will do 3rd
      trimester labs tomorrow, lab slip given to pt will
      ordwer sono for interval growth as difficult to assess
      fetal size due to body habitus. pt says her PPD was
      neg. pt reports previous baby "small and was difficult
      birth (forcep), "they had me prepared for a c-
      section." Signed Tricia

19.   On March 19, 2003, Mrs. Lara was evaluated at the East
      Boston Health Center for a routine prenatal visit. The
      examiner reported the following:

20.   On March 26, 2003, Mrs. Lara was called to inform her that
      she had an elevated 1 Hr GLT and the need for 3 Hrs GTT. A
      message was left in her voicemail. A nurse Bonnie had
      already spoken to Mrs. Lara about the need to follow up her
      BS.

6

21.  On April 8, 2003, Mrs. Lara was evaluated at the East
     Boston Health Center for a routine prenatal visit; the
     examiner reported the following:

          (a) "Feels well, will see nutritionist today and start
          weekly visits for care. Will do FBS and 2 hr PP next
          visit to assess diet control of abnl GTT. Pt will
          start NST at 34 weeks, will have sonogram for interval
          growth and well being at 35 and 39 weeks. Consult Dr
          Tracy and reviewed labs." Signed Tricia

22.  On April 16, 2003, Mrs. Lara was evaluated at the East
     Boston Health Center for a prenatal follow up visit; the
     examiner reported the following:

          (a) "Denies vag bleeding leaking and ctx, reports good
          FM, c/o vag pressure, denies sxs of UTI urine dip neg,
          given Rx for Maternity support Belt, Rev PTL
          precautions warnings signs, daily FM, Did not have
          FBS/2Hrs PP. will go to lab tomorrow for FBS and 2 hrs
          PP. to book w FP couns. RTC in a wk w CNM/PRN

23.  On April 22, 2003, Mrs. Lara was evaluated at the East
     Boston Health Center for a routine prenatal visit; the
     examiner reported the following:

          (a) "Reviewed blood sugars with Dr Hanley. Pt needs to
          start checking her blood sugars at home while on diet
          for one week to assess CHO metabolism. Will set up
          teaching with RN. Pt will start NST's next visit.
          Reports active baby." Signed Tricia

24.  On May 5, 2003, Mrs. Lara was evaluated at the East Boston
     Health Center for glucometer teaching; the examiner
     reported the following:

                                    7

(a) " Pt. very anxious about "sticking myself
w/needles." Pt. able to return demonstration
w/glucometer. Discussed NL values for BS. Pt. requires
a lot of reassurance regarding finger sticks. Pt.
uncertain about returning RN visit, wants to speak
w/provider this Wed. Pt. to CB w/concerns or ?'s pm.
Pt. verbalized understanding."

25. On May 7, 2003, Mrs. Lara was evaluated at the East Boston
Health Center for a prenatal follow up visit and NST [non
stress test]; the examiner reported the following:

(a) "Denies vag bleeding reports lot of FM [fetl
movements], req ref on terazol 7 and PN [prenatal] vits
[vitamins], non reactive NST [non stress test] sent for
BPP [biophysical profile], also FBS and 2 Hrs PP all
per cons to Dr Iverson. GBS done. DOING GLUCOMTER bs
CHECK AT HOME ALL fbs LESS THAN 100 AND 2Hrs PP LESS
THAN 120 BUT 1 OF 124.. sent for BPP today. TO BOOK W
nutrition for ASAP, has appt w FP couns today. RTC IN A
WK W CNM/PRN."

26. On May 13, 2003, Mrs. Lara was evaluated at the East Boston
Health Center for a routine prenatal visit; the examiner
reported the following:

(a) "Reviewed FBS [fasting blood sugar] and 2 hr PP
[post prandial] bld sugars for this wk—mostly WNL
[within normal limits]. FBS today=123. 3+ glucose in
urine today. Pt says "cheated last noc on diet". NST
[non stress test] today nonreactive with one variable
from 150's baseline to 120's. Consult with Dr Hanley-
pt to MGH [Massachusetts General Hospital] for BPP
[biophysical profile] and EFW [estimated fetal

8

weight]. Rtc [return to clinic] in one wk as planned."
Signed Tricia

27. On May 22, 2003, Mrs. Lara was evaluated at the East Boston
Health Center for a routine prenatal visit and for a NST
(non stress test); the examiner reported the following:

(a) "Denies vag bleeding, leaking and ctx
(contractions), reports good FM (fetal movement) urine
dip neg but + nitrite denies sxs (symptoms) of uti
(urinary tract infection) rev w Dr. Iverson. Reactive
NST, to sent for U/A, C [culture] & sens [sensitivity]
(urianalysis, culture and sensitivity) to call for
results, Rev + vag GBS and need for antibiotic on
labor rev labor precautions warnings signs daily FM,
cont w BS check w glucometer all FBS less than 100 and
all 2 Hrs PP less than 120. RTC (return to clinic) in
1 wk w CNM for PN care and NST/PRN." The fetal heart
tones were diagnosed as present.

28. On May 27, 2003, Mrs. Lara was evaluated at the East Boston
Health Center for a routine prenatal visit; the examiner
reported the following:

(a) "Glucose testing was reviewed, all BS [blood sugar]
are WNL [within normal limits] for FBS [fasting blood
sugar and 2 hr PP [post prandial]. Pt reports fetal
activity, unable to do a NST [non stress test] due to
pt habitus, sent for BPP [biophysical profile] today."
The fetal heart tones were diagnosed as present.
Signed Tricia

29. On May 27, 2003, Mrs. Lara was referred to the
Massachusetts General Hospital for a Biophysical Profile
because of the inability to obtain a Non-Stress test at the

9

East Boston Health Center. The Biophysical Profile was
reported as:

> (a) "Examination of the uterus reveals a single fetus in
> vertex presentation with a posterior placenta. The
> amniotic fluid volume appears normal. There is no
> fetal motion and no fetal heart motion. There is
> evidence of maceration. The midwifery service was
> informed and the patient was brought to labor and
> delivery." Signed by: Allan S. Nadel (radiologist).

30.  Mrs. Lara was admitted to the Massachusetts General
     Hospital's Labor and Delivery on May 27, 2003 with a
     diagnosis of Intrauterine Fetal Demise and under epidural
     anesthesia delivered a 38 week old, male infant stillborn
     infant weighing 3519 grams. Mrs. Lara was discharged from
     the Massachusetts General Hospital on May 28, 2003.

31.  In violation of the duty owed to Mrs. Lara and Jose Angel
     Lara, the Defendant Patricia Grabauskas, C.N.M.,
     negligently cared for and treated Mrs. Lara and Jose Angel
     Lara and/or failed to care and treat them such that (baby
     boy) Jose Angel Lara was caused to sustain severe personal
     injuries that led to his death in-utero and stillbirth.

32.  In violation of the duty owed to Mrs. Lara and Jose Angel
     Lara, the Defendant Olga Cordero, R.N., negligently cared
     for and treated Mrs. Lara and (baby boy) Jose Angel Lara
     and/or failed to care and treat them such that Jose Angel
     Lara was caused to sustain severe personal injuries that
     led to his death in-utero and stillbirth.

33.  In violation of the duty owed to Mrs. Lara and Jose Angel
     Lara, the Defendant East Boston Health Center, by and
     through its agents, servants or employees or persons for

whose conduct it was responsible, negligently cared for and treated Mrs. Lara and (baby boy) Jose Angel Lara and/or failed to care and treat them such that Jose Angel Lara was caused to sustain severe personal injuries that led to his death in-utero and stillbirth.

## COUNT I

### (Patricia Grabauskas, C.N.M., Negligence - Wrongful Death)

34.   The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby repeats, realleges and incorporates fully herein Paragraphs One through Thirty-three inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

35.   At all times relevant to this complaint, the Defendant, Patricia Grabauskas, C.N.M., represented and held herself out to be skilled in the treatment of various illnesses and conditions in the field of Obstetrics and, in particular, represented to Anne Marie Lara that she was knowledgeable, competent and qualified to diagnose and treat Anne Marie Lara and her pregnancy on or about November of 2002 and thereafter.

36.   On or about November of 2002 and thereafter, Mrs. Lara submitted herself to the care and treatment of the Defendant, Patricia Grabauskas, C.N.M., who negligently and carelessly and without regard for her health and well-being or that of (baby boy) Jose Angel Lara, treated said Anne

11

Marie **Lara** in a manner which resulted in severe personal
injuries and the death of her singleton male-pregnancy.

37.   The injuries sustained by Mrs. Lara were the direct and
proximate result of the carelessness, unskillfulness,
negligence and improper care and treatment by the
Defendant, Patricia Grabauskas, C.N.M., including but not
limited to the following:

   a.   her misrepresentations to Mrs. Lara, on or about
        November of 2002 and thereafter, that she was
        knowledgeable, skillful and competent to
        diagnose, manage and treat Mrs. Lara's diabetic
        pregnancy;

   b.   her failure, on or about November of 2002 and
        thereafter, to adequately and properly diagnose
        and manage the medical condition of Mrs. Lara,
        and her failure to properly treat said condition;

   c.   her failure to recognize, or to have the
        knowledge to recognize, her inability and lack of
        skill to treat Mrs. Lara, when she knew or should
        have known of the foreseeable consequences of her
        inability and failure to properly and skillfully
        provide Mrs. Lara with acceptable medical care
        and treatment;

   d.   her failure to exercise the degree of care, skill
        and judgment expected of a competent medical
        practitioner acting in the same or similar
        circumstances, which duty included the
        performance of adequate and proper diagnostic
        tests and procedures to determine the severity of
        Mrs. Lara 's condition, careful diagnosis of such
        condition, employment of appropriate personnel,
        procedures, surgery and/or treatment to correct
        such conditions without injury upon Mrs. Lara and
        her singleton-pregnancy, continuous evaluation
        and the effects of such treatment, and adjustment
        of the course of treatment in response to such

12

ongoing surveillance and evaluation, all of which
Defendant failed to do;

e.    her failure to possess and exercise that degree
of skill, training and care as is possessed and
exercised by the average qualified members of the
medical profession practicing her specialty;

f. her failure to inform and to warn of the risks
involved in or associated with Mrs. Lara 's
condition and failure to inform and to warn her
about the treatment of said condition.

38.  As a direct and proximate result of the negligence,
carelessness and unskillfulness of the Defendant, Patricia
Grabauskas, C.N.M., Mrs. Lara, was caused to sustain severe
and permanent personal injuries including the death of her
singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Patricia Grabauskas, C.N.M., in an amount which is just and
appropriate to compensate for the wrongful death of the said
minor child, Jose Angel Lara, together with interest and costs.

## COUNT II
## (Patricia Grabauskas, C.N.M. - Gross Negligence - Wrongful
Death)

39.  The Plaintiff, Anne Marie Lara, as the duly appointed
Administratrix of the Estate of Jose Angel Lara, hereby,
repeats, realleges and incorporates fully herein Paragraphs
One through Thirty-eight inclusive of this Complaint as if
specifically set forth herein, paragraph by paragraph, word
by word.

40.  As a direct and proximate result of the gross negligence,
     carelessness and unskillfulness of the Defendant, Patricia
     Grabauskas, C.N.M., Mrs. Lara was caused to sustain severe
     and permanent personal injuries including the death of one
     of her singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Patricia Grabauskas, C.N.M., for punitive damages in causing the
death of Jose Angel Lara by her gross negligence in accordance
with the provisions of M.G.L. c. 229, as amended and applicable
at times material herein, in an amount which is just and
appropriate to compensate for Jose Angel Lara's death, together
with interest and costs.

## COUNT III
### (Olga Cordero, R.N., Negligence - Wrongful Death)

41.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Forty inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

41.  At all times relevant to this complaint, the Defendant,
     Olga Cordero, R.N., represented and held herself out to be
     skilled in the treatment of various illnesses and
     conditions in the field of Obstetrics and, in particular,
     represented to Anne Marie Lara that she was knowledgeable,
     competent and qualified to diagnose and treat Anne Marie

14

Lara and her pregnancy on or about November of 2002 and
thereafter.

42.  On or about November of 2002 and thereafter, Mrs. Lara
submitted herself to the care and treatment of the
Defendant, Olga Cordero, R.N., who negligently and
carelessly and without regard for her health and well-being
or that of (baby boy) Jose Angel Lara, treated the said
Anne Marie Lara in a manner which resulted in severe
personal injuries and the death of her singleton male-
pregnancy.

43.  The injuries sustained by Mrs. Lara were the direct and
proximate result of the carelessness, unskillfulness,
negligence and improper care and treatment by the
Defendant, Olga Cordero, R.N. including but not limited to
the following:

     a.  her misrepresentations to Mrs. Lara, on or about
         November of 2002 and thereafter, that she was
         knowledgeable, skillful and competent to
         diagnose, manage and treat Mrs. Lara's twin-
         pregnancy;
     b.  her failure, on or about November of 2002 and
         thereafter, to adequately and properly diagnose
         and manage the medical condition of Mrs. Lara,
         and her failure to properly treat said condition;
     c.  her failure to recognize, or to have the
         knowledge to recognize, her inability and lack of
         skill to treat Mrs. Lara, when she knew or should
         have known of the foreseeable consequences of her
         inability and failure to properly and skillfully
         provide Mrs. Lara with acceptable medical care
         and treatment;
     d.  her failure to exercise the degree of care, skill
         and judgment expected of a competent medical

                                    15

practitioner acting in the same or similar
circumstances, which duty included the
performance of adequate and proper diagnostic
tests and procedures to determine the severity of
Mrs. Lara 's condition, careful diagnosis of such
condition, employment of appropriate procedures,
surgery and/or treatment to correct such
conditions without injury upon Mrs. Lara and her
singleton-pregnancy, continuous evaluation and
the effects of such treatment, and adjustment of
the course of treatment in response to such
ongoing surveillance and evaluation, all of which
Defendant failed to do;

e.   her failure to possess and exercise that degree
of skill, training and care as is possessed and
exercised by the average qualified members of the
medical profession practicing her specialty;

f.   her failure to inform and to warn of the risks
involved in or associated with Mrs. Lara 's
condition and failure to inform and to warn her
about the treatment of said condition.

44.   As a direct and proximate result of the negligence,
carelessness and unskillfulness of the Defendant, Olga
Cordero, R.N., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of her
singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Olga Cordero, R.N., in an amount which is just and appropriate
to compensate for the wrongful death of the said minor child,
Jose Angel Lara, together with interest and costs.

### COUNT IV

### (Olga Cordero, R.N. - Gross Negligence - Wrongful Death)

16

45. The Plaintiff, Anne Marie Lara, as the duly appointed
Administratrix of the Estate of Jose Angel Lara, hereby
repeats, realleges and incorporates fully herein Paragraphs
One through Forty-four inclusive of this Complaint as if
specifically set forth herein, paragraph by paragraph, word
by word.

46. As a direct and proximate result of the gross negligence,
carelessness and unskillfulness of the Defendant, Olga
Cordero, R.N., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of one of
her singleton male-pregnancy.

WHEREFORE, the Plaintiff demands judgment against the Defendant,
Olga Cordero, R.N., for punitive damages in causing the death of
Jose Angel Lara by her gross negligence in accordance with the
provisions of M.G.L. c. 229, as amended and applicable at times
material herein, in an amount which is just and appropriate to
compensate them for Jose Angel Lara's death, together with
interest and costs.

17

## COUNT V

## (East Boston Neighborhood Health Center - Negligence - Wrongful Death)

47.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Forty-six inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

48.  At all times relevant to this Complaint, The Plaintiff
     alleges that East Boston Neighborhood Health Center through
     its agents, servants and employees, owed Mrs. Lara and her
     pregnancy a duty to exercise a degree of care, skill and
     judgment expected of a competent medical corporation acting
     in the same or similar circumstances, which duty included
     the performance of adequate and proper diagnostic tests and
     procedures to determine the nature and severity of the
     Plaintiff's condition, careful diagnosis of such condition,
     employment of appropriate personnel, procedures, tests,
     surgery and/or treatment to correct such conditions without
     inflicting injury upon Anne Marie Lara and her pregnancy,
     all of which the Defendant's agents, servants and employees
     failed to do on or about November 2002 and thereafter.

49.  On or about November of 2002 and thereafter, Mrs. Lara
     submitted herself to the care and treatment of East Boston
     Neighborhood Health Center, its agents, servants and
     employees.  The Plaintiff alleges that East Boston
     Neighborhood Health Center through its agents, servants and
     employees, owed Mrs. Lara and her pregnancy a duty to
     exercise a degree of care, skill and judgment expected of a

18

competent medical corporation acting in the same or similar
circumstances, which duty included the performance of
adequate and proper diagnostic tests and procedures to
determine the nature and severity of the Mrs. Lara's
condition, careful diagnosis of such condition, employment
of appropriate personnel, procedures, tests, surgery and/or
treatment to correct such conditions without inflicting
injury upon Mrs. Lara and her pregnancy, continuous
evaluation of her condition and effects of such treatment,
and the adjustment of the course of treatment in response
to ongoing surveillance and evaluation, all of which the
Defendant's agents, servants and employees failed to do and
who negligently and carelessly and without regard for Mrs.
Lara's health and well-being, treated Mrs. Lara and baby
boy Jose Angel Lara in a manner which resulted in severe
personal injuries to Mrs. Lara and Jose Angel Lara, and
ultimately the death of one of her singleton male-pregnancy
in November, 2002.

50.   East Boston Neighborhood Health Center through its agents,
      servants and/or employees, was negligent in that it failed
      to employ appropriate personnel, treatment, surgery and/or
      procedures, failed to carefully and thoroughly evaluate
      Mrs. Lara's condition, failed to thoroughly evaluate the
      effects and results of any tests, treatment and/or
      procedures performed, failed to adjust Mrs. Lara's
      treatment in response to appropriate evaluation of the
      effects of treatment, failed to properly monitor the course
      of Mrs. Lara's condition and treatment, failed to employ
      adequate and proper diagnostic procedures and/or tests to
      determine the nature and extent of Mrs. Lara's condition,
      failed to diagnose the Mrs. Lara's condition and was

                                    19

otherwise negligent, including but not limited to the
following:

   a.    On or about November of 2002 and thereafter, Mrs.
         Lara presented to Defendant's medical facility
         requesting evaluation and management of her
         medical condition, including abdominal pain;

   b.    During the prenatal visits between November of
         2002 and May 2003 and thereafter, Mrs. Lara,
         continued to be evaluated and treated by
         Defendants, Patricia Grabauskas, C.N.M. and Olga
         Cordero, R.N. and was not referred to an
         obstetrician for care and treatment for her high
         risk condition;

   c.    Defendant's agents, servants and employees
         acknowledged Mrs. Lara's complaints and treated
         her without performing the necessary tests,
         evaluations and referral to an obstetrician to
         obtain a diagnosis for Mrs. Lara's symptoms. No
         testing nor diagnostic evaluations for a patient
         situated in conditions similar to that of Mrs.
         Lara were conducted;

   d.    Defendant's agents, servants and employees
         proceeded to discourage Mrs. Lara from obtaining
         the necessary testing, diagnostic evaluations and
         referral to an obstetrician for a patient
         situated in conditions similar to that of Mrs.
         Lara;

   e.    Relying on the recommendations of Defendant's
         agents, servants and employees, who were Mrs.
         Lara's caregivers, Mrs. Lara followed Defendant's
         agents, servants and employees recommendations

                              20

and did not have the necessary testing,
diagnostic evaluations and referral to an
obstetrician which her condition required;

51. The injuries sustained by Mrs. Lara and Jose Angel Lara,
were the direct and proximate result of the carelessness,
unskillfulness, negligence and improper care and treatment
by East Boston Neighborhood Health Center's agents,
servants and employees, including but not limited to the
following:

     a.    its misrepresentations to Mrs. Lara that through
its agents, servants and employees, it was
knowledgeable, skillful and competent to diagnose
and treat her and her pregnancy on or about
November of 2002 and thereafter;

     b.    its failure through its agents, servants and
employees, to adequately and properly diagnose
the medical condition of Mrs. Lara and her
pregnancy on or about November of 2002 and
thereafter, and its failure to properly treat
said condition;

     c.    its failure through its agents, servants and
employees, to recognize, or to have the knowledge
to recognize its inability and lack of skill to
treat Mrs. Lara and her pregnancy, when it knew
or should have known of the foreseeable
consequences of its inability and failure
properly and skillfully to provide her with
acceptable medical care and treatment;

     d.    its failure through its agents, servants and
employees, to exercise the degree of care, skill

21

and judgment expected of a competent medical
practitioner acting in the same or similar
circumstances, which duty included the
performance of adequate and proper diagnostic
tests and procedures to determine the severity of
the Plaintiff's condition, careful diagnosis of
such condition, employment of appropriate
personnel, procedures, surgery and/or treatment
to correct such conditions without injury upon
Mrs. Lara and her pregnancy, continuous
evaluation and the effects of such treatment, and
adjustment of the course of treatment in response
to such ongoing surveillance and evaluation, all
of which the Defendant through its agents,
servants and employees failed to do;

e.   its failure through its agents, servants and
     employees, to possess and exercise that degree of
     skill, training and care as is possessed and
     exercised by the average qualified members of the
     medical profession practicing their specialty;

f.   its failure through its agents, servants and
     employees, to inform and to warn of the risks
     involved in or associated with the Mrs. Lara's
     condition and failure to inform and to warn about
     the treatment of said condition.

52.  As a direct and proximate result of the negligence,
     carelessness and unskillfulness of East Boston Neighborhood
     Health Center's agents, servants and employees, Mrs. Lara
     was caused to sustain severe and permanent personal

22

injuries, which ultimately led to the death of Jose Angel
Lara, her singleton male-pregnancy in May, 2003.

WHEREFORE, the Plaintiff demands judgment against the Defendant,
East Boston Neighborhood Health Center, in an amount which is
just and appropriate to compensate for the wrongful death of the
said minor child, Jose Angel Lara, together with interest and
costs.


## COUNT VI
### (East Boston Neighborhood Health Center - Gross Negligence - Wrongful Death)

53.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Fifty-two inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

54.  As a direct and proximate result of the gross negligence,
     carelessness and unskillfulness of the Defendant, East
     Boston Neighborhood Health Center, Mrs. Lara was caused to
     sustain severe and permanent personal injuries including
     the death of Jose Angel Lara, her singleton male-pregnancy.

WHEREFORE, the Plaintiff, demands judgment against the
Defendant, East Boston Neighborhood Health Center, for punitive
damages in causing the death of Jose Angel Lara by its gross

23

negligence in accordance with the provisions of M.G.L. c. 229,
as amended and applicable at times material herein, in an amount
which is just and appropriate to compensate for Jose Angel
Lara's death, together with interest and costs.

## COUNT VII

### (Lauren E. Hanley, M.D., Negligence – Wrongful Death)

55.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Fifty-four inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

56.  At all times relevant to this complaint, the Defendant,
     Lauren E. Hanley, M.D., represented and held herself out to
     be skilled in the treatment of various illnesses and
     conditions in the field of Obstetrics and, in particular,
     represented to Anne Marie Lara that she was knowledgeable,
     competent and qualified to diagnose and treat Anne Marie
     Lara and her pregnancy on or about November of 2002 and
     thereafter.

57.  On or about November of 2002 and thereafter, Mrs. Lara
     submitted herself to the care and treatment of the
     Defendant, Lauren E. Hanley, M.D., who negligently and
     carelessly and without regard for her health and well-
     being, treated the said Anne Marie Lara in a manner which
     resulted in severe personal injuries and the death of her
     singleton male-pregnancy.

58.  The injuries sustained by Mrs. Lara were the direct and
     proximate result of the carelessness, unskillfulness,

24

negligence and improper care and treatment by the
Defendant, Lauren E. Hanley, M.D., including but not
limited to the following:

- a.  her misrepresentations to Mrs. Lara, on or about
     November of 2002 and thereafter, that she was
     knowledgeable, skillful and competent to diagnose
     and treat Mrs. Lara's diabetic pregnancy;
- b.  her failure, on or about November of 2002 and
     thereafter, to adequately and properly diagnose
     the medical condition of Mrs. Lara, and her
     failure to properly treat said condition;
- c.  her failure to recognize, or to have the
     knowledge to recognize, her inability and lack of
     skill to treat Mrs. Lara, when she knew or should
     have known of the foreseeable consequences of her
     inability and failure to properly and skillfully
     provide Mrs. Lara with acceptable medical care
     and treatment;
- d.  her failure to exercise the degree of care, skill
     and judgment expected of a competent medical
     practitioner acting in the same or similar
     circumstances, which duty included the
     performance of adequate and proper diagnostic
     tests and procedures to determine the severity of
     Mrs. Lara 's condition, careful diagnosis of such
     condition, employment of appropriate procedures,
     surgery and/or treatment to correct such
     conditions without injury upon Mrs. Lara and her
     singleton-pregnancy, continuous evaluation and
     the effects of such treatment, and adjustment of
     the course of treatment in response to such
     ongoing surveillance and evaluation, all of which
     Defendant failed to do;
- e.  her failure to possess and exercise that degree
     of skill, training and care as is possessed and
     exercised by the average qualified members of the
     medical profession practicing her specialty;

25

                f.    her failure to inform and to warn of the risks
                     involved in or associated with Mrs. Lara 's
                     condition and failure to inform and to warn her
                     about the treatment of said condition.

59.  As a direct and proximate result of the negligence,
      carelessness and unskillfulness of the Defendant, Lauren E.
      Hanley, M.D., Mrs. Lara, was caused to sustain severe and
      permanent personal injuries including the death of her
      singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Lauren E. Hanley, M.D., in an amount which is just and
appropriate to compensate for the wrongful death of the said
minor child, Jose Angel Lara, together with interest and costs.

## COUNT VIII

### (Lauren E. Hanley, M.D. – Gross Negligence – Wrongful Death)

60.  The Plaintiff, Anne Marie Lara, as the duly appointed
      Administratrix of the Estate of Jose Angel Lara, hereby
      repeats, realleges and incorporates fully herein Paragraphs
      One through Fifty-nine inclusive of this Complaint as if
      specifically set forth herein, paragraph by paragraph, word
      by word.

61.  As a direct and proximate result of the gross negligence,
      carelessness and unskillfulness of the Defendant, Lauren E.
      Hanley, M.D., Mrs. Lara, was caused to sustain severe and
      permanent personal injuries including the death of her
      singleton male-pregnancy.

WHEREFORE, the Plaintiff demands judgment against the Defendant, Lauren E. Hanley, M.D., for punitive damages in causing the death of Jose Angel Lara by her gross negligence in accordance with the provisions of M.G.L. c. 229, as amended and applicable at times material herein, in an amount which is just and appropriate to compensate for Baby (Boy) Jose Angel Lara's death, together with interest and costs.

## COUNT IX

### (Erin E. Tracy, M.D., Negligence - Wrongful Death)

62. The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby repeats, realleges and incorporates fully herein Paragraphs One through Sixty-one inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

63. At all times relevant to this complaint, the Defendant, Erin E. Tracy, M.D., represented and held herself out to be skilled in the treatment of various illnesses and conditions in the field of Obstetrics and, in particular, represented to Anne Marie Lara that she was knowledgeable, competent and qualified to diagnose and treat Anne Maria Lara and her pregnancy on or about November of 2002 and thereafter.

64. On or about November of 2002 and thereafter, Mrs. Lara submitted herself to the care and treatment of the Defendant, Erin E. Tracy, M.D., who negligently and

27

carelessly and without regard for her health and well-
being, treated the said Anne Marie Lara in a manner which
resulted in severe personal injuries and the death of her
singleton male-pregnancy.

65.    The injuries sustained by Mrs. Lara were the direct and
proximate result of the carelessness, unskillfulness,
negligence and improper care and treatment by the
Defendant, Erin E. Tracy, M.D., including but not limited
to the following:

> a.    her misrepresentations to Mrs. Lara, on or about
> November of 2002 and thereafter, that he was
> knowledgeable, skillful and competent to diagnose
> and treat Mrs. Lara's diabetic pregnancy;
>
> b.    her failure, on or about November of 2002 and
> thereafter, to adequately and properly diagnose
> the medical condition of Anne Marie Lara, and her
> failure to properly treat said condition;
>
> c.    her failure to recognize, or to have the
> knowledge to recognize, his inability and lack of
> skill to treat Mrs. Lara, when she knew or should
> have known of the foreseeable consequences of her
> inability and failure to properly and skillfully
> provide Mrs. Lara with acceptable medical care
> and treatment;
>
> d. her failure to exercise the degree of care, skill
> and judgment expected of a competent medical
> practitioner acting in the same or similar
> circumstances, which duty included the performance
> of adequate and proper diagnostic tests and
> procedures to determine the severity of Mrs. Lara 's
> condition, careful diagnosis of such condition,
> employment of appropriate procedures, surgery and/or
> treatment to correct such conditions without injury
> upon Mrs. Lara and her singleton-pregnancy,
> continuous evaluation and the effects of such
> treatment, and adjustment of the course of treatment

28

> in response to such ongoing surveillance and
> evaluation, all of which Defendant failed to do;
> e. her failure to possess and exercise that degree of
>    skill, training and care as is possessed and
>    exercised by the average qualified members of the
>    medical profession practicing her specialty;
> f. her failure to inform and to warn of the risks
>    involved in or associated with Mrs. Lara 's
>    condition and failure to inform and to warn her
>    about the treatment of said condition.

66. As a direct and proximate result of the negligence,
    carelessness and unskillfulness of the Defendant, Erin E.
    Tracy, M.D., Mrs. Lara, was caused to sustain severe and
    permanent personal injuries including the death of her
    singleton male-pregnancy.

**WHEREFORE,** the Plaintiff demands judgment against the Defendant,
Erin E. Tracy, M.D., in an amount which is just and appropriate
to compensate for the wrongful death of the said minor child,
Jose Angel Lara, together with interest and costs.

## COUNT X

### (Erin E. Tracy, M.D. - Gross Negligence - Wrongful Death)

67. The Plaintiff, Anne Marie Lara, as the duly appointed
    Administratrix of the Estate of Jose Angel Lara, hereby
    repeats, realleges and incorporates fully herein Paragraphs
    One through Sixty-six inclusive of this Complaint as if
    specifically set forth herein, paragraph by paragraph, word
    by word.

68. As a direct and proximate result of the gross negligence,
    carelessness and unskillfulness of the Defendant, Erin E.

29

Tracy, M.D., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of her
singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Erin E. Tracy, M.D., for punitive damages in causing the death
of Jose Angel Lara by her gross negligence in accordance with
the provisions of M.G.L. c. 229, as amended and applicable at
times material herein, in an amount which is just and
appropriate to compensate for Baby (Boy) Jose Angel Lara's
death, together with interest and costs.

## COUNT XI

### (Ronald E. Iverson, M.D., Negligence - Wrongful Death)

69.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Sixty-eight inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

70.  At all times relevant to this complaint, the Defendant,
     Ronald E. Iverson, M.D., represented and held himself out
     to be skilled in the treatment of various illnesses and
     conditions in the field of Obstetrics and, in particular,
     represented to the Plaintiff that he was knowledgeable,
     competent and qualified to diagnose and treat Anne Marie

30

Lara and her pregnancy on or about November of 2002 and
thereafter.

71.   On or about November of 2002 and thereafter, Mrs. Lara
      submitted herself to the care and treatment of the
      Defendant, Ronald E. Iverson, M.D., who negligently and
      carelessly and without regard for her health and well-
      being, treated the said Anne Marie Lara in a manner which
      resulted in severe personal injuries and the death of her
      singleton male-pregnancy.

72.   The injuries sustained by Mrs. Lara were the direct and
      proximate result of the carelessness, unskillfulness,
      negligence and improper care and treatment by the
      Defendant, Ronald E. Iverson, M.D.,  including but not
      limited to the following:

            a.   his misrepresentations to Mrs. Lara, on or about
                 November of 2002 and thereafter, that he was
                 knowledgeable, skillful and competent to diagnose
                 and treat Mrs. Lara's diabetic pregnancy;

            b.   his failure, on or about November of 2002 and
                 thereafter, to adequately and properly diagnose
                 the medical condition of Mrs. Lara, and his
                 failure to properly treat said condition;

            c.   his failure to recognize, or to have the
                 knowledge to recognize, his inability and lack of
                 skill to treat Mrs. Lara, when he knew or should
                 have known of the foreseeable consequences of his
                 inability and failure to properly and skillfully
                 provide Mrs. Lara with acceptable medical care
                 and treatment;

            d.   his failure to exercise the degree of care, skill
                 and judgment expected of a competent medical
                 practitioner acting in the same or similar
                 circumstances, which duty included the
                 performance of adequate and proper diagnostic
                 tests and procedures to determine the severity of

                              31

            Mrs. Lara 's condition, careful diagnosis of such
condition, employment of appropriate procedures,
surgery and/or treatment to correct such
conditions without injury upon Mrs. Lara and her
singleton-pregnancy, continuous evaluation and
the effects of such treatment, and adjustment of
the course of treatment in response to such
ongoing surveillance and evaluation, all of which
Defendant failed to do;

   e.   his failure to possess and exercise that degree
of skill, training and care as is possessed and
exercised by the average qualified members of the
medical profession practicing his specialty;

   f.   his failure to inform and to warn of the risks
involved in or associated with Mrs. Lara 's
condition and failure to inform and to warn her
about the treatment of said condition.

73.  As a direct and proximate result of the negligence,
carelessness and unskillfulness of the Defendant, Ronald E.
Iverson, M.D., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of one of
her singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Ronald E. Iverson, M.D., in an amount which is just and
appropriate to compensate for the wrongful death of the said
minor child, Jose Angel Lara, together with interest and consts.

32

## COUNT XII

### (Ronald E. Iverson, M.D. - Gross Negligence - Wrongful Death)

74.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Seventy-three inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

75.  As a direct and proximate result of the gross negligence,
     carelessness and unskillfulness of the Defendant, Ronald E.
     Iverson, M.D., Mrs. Lara was caused to sustain severe and
     permanent personal injuries including the death of her
     singleton male-pregnancy.

**WHEREFORE**, the Plaintiff, demands judgment against the

Defendant, Ronald E. Iverson, M.D., for punitive damages in

causing the death of Jose Angel Lara by his gross negligence in

accordance with the provisions of M.G.L. c. 229, as amended and

applicable at times material herein, in an amount which is just

and appropriate to compensate for the wrongful death of the said

minor child, Jose Angel Lara, together with interest and costs.

33

05/17/2005  13:38    7818909098                    GOROVITZ BORTEN PC                          PAGE  41/

**PLAINTIFF DEMANDS TRIAL BY JURY.**

ANNE MARIE LARA Administratrix of the
Estate of Baby (boy) Jose Angel Lara
By their attorneys,

Sidney Gorovitz, Esquire
GOROVITZ & BORTEN, P.C.
395 Totten Pond Road, Suite 401
Waltham, MA 02451
(781) 890-9095

**Dated:** May 17, 2005

34

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only) _____

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    ___   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    ___   II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

    X     III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ___   IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___   V.    150, 152, 153.

05 11043 RGS

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    _____ n/a _____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                    YES ☐        NO ☒

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                    YES ☐        NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                    YES ☐        NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                    YES ☐        NO ☒

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                    YES ☒        NO ☐

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division  ☒      Central Division  ☐      Western Division  ☐

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division  ☐      Central Division  ☐      Western Division  ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

                                                    YES ☐        NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _____
ADDRESS _____
TELEPHONE NO. (617) _____

(CategoryForm.wpd -5/2/05)

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Anne Marie Lara, Admix. of the Estate of Baby Boy Jose Angel Lara | Patricia Grabauskas, CNM, et al. |

**(b)** County of Residence of First Listed Plaintiff    Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Sidney Gorvitz, GOROVITZ & BORTEN, 395 Totten Pond Road #401
Waltham, MA 02451 (781) 890-9095

Attorneys (If Known)

Rayford A. Farquhar, Assistant U.S. Attorney

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      (U.S. Government Not a Party)

☒ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

Appeal to District Judge from Magistrate Judgment

☐ 1  Original
      Proceeding

☒ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      another district
      (specify)

☐ 6  Multidistrict
      Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
Federal Tort Claims Act
Brief description of cause:
Medical Malpractice case allegedly occurring at a federally funded health care clinic.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
5·18·05

SIGNATURE OF ATTORNEY OF RECORD
Rayford A. F... , AUSA

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____