## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____ )
**ANNE MARIE LARA as Administratrix of the**            )
**Estate of JOSE ANGEL LARA**                                     )
                                                                                       )
         Plaintiffs                                                           )
                                                                                       )
**v.**                                                                                     )
                                                                                       )   **CIVIL ACTION**
**PATRICIA GRABAUSKAS, C.N.M..,**                              )       **NO.**
**OLGA CORDERO, R.N.**                                               )   **05-11043-RGS**
**EAST BOSTON NEIGHBORHOOD HEALTH CENTER**     )
**LAUREN E. HANLEY, M.D.**                                         )
**ERIN E. TRACY, M.D., and**                                        )
**RONALD E. IVERSON, M.D.**                                       )
                                                                                       )
                                                                                       )
         Defendants                                                        )
_____ )

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### OVERVIEW

This Complaint represents claims for medical malpractice against Defendants, Patricia Grabauskas, C.N.M. ("Nurse Grabauskas"), Olga Cordero, R.N. ("Nurse Cordero"), East Boston Neighborhood Health Center ("Health Center"), Lauren E. Hanley, M.D. ("Dr. Hanley"), Erin E. Tracy, M.D. ("Dr. Tracy") and Ronald E Iverson, M.D. ("Dr. Iverson").

Mrs. Anne Marie Lara ("Mrs. Lara") was a patient who became pregnant after trying to conceive for approximately 10 years. Mrs. Lara was a prenatal patient at the Health Center and was provided prenatal care by Nurse Grabauskas and Nurse Cordero

between November 2002 and May 2003 and thereafter.  Mrs. Lara was diagnosed to be a diabetic patient during her pregnancy and, notwithstanding her high risk status, her entire prenatal care was provided by Nurses Grabauskas and Cordero. Mrs. Lara had several blood tests that were considered abnormal but was not referred to be cared for by an obstetrician and/or a perinatologist specializing in high risk obstetrics. During Mrs. Lara's entire prenatal care, she was never referred for a high risk perinatal evaluation with a perinatologist or a physician specializing in diabetic gestations.

On May 27, 2003, Mrs. Lara was evaluated at the Health Center and, because of fetal heart abnormalities, was referred to the Massachusetts General Hospital where she was diagnosed as carrying an Intrauterine Fetal Stillborn. Labor was induced on May 28, 2003 and Mrs. Lara delivered Jose Angel as a stillbirth the same day.

As a direct consequence of the negligence of the Defendants in the instant case, Mr. and Mrs. Lara incurred the tragic loss of their baby boy Jose Angel Lara at approximately 38 weeks of gestation and his brother Elvin Lara, Jr. has  tragically lost his baby brother.

## JURISDICTIONAL ALLEGATIONS
## AND IDENTIFICATION OF PARTIES

1.   The Plaintiff is Anne Marie Lara, the duly appointed Administratrix of the Estate of Jose Angel Lara, by decree of Suffolk (Mass.) Probate and Family Court Docket No. 05P0091-AD1 entered on March 9, 2005.  The Administratrix

resides at 174 Faywood Avenue, East Boston, County of Suffolk, Commonwealth of Massachusetts, 02128;

2. The Defendant, Patricia Grabuaskas, C.N.M. ("Nurse Grabauskas"), was at all times relevant to this complaint, a Certified Nurse Midwife licensed to practice nursing and medicine in the Commonwealth of Massachusetts with a business address at 10 Grove Street, East Boston, County of Suffolk, Commonwealth of Massachusetts 02128;

3. The Defendant, Olga Cordero, R.N. ("Nurse Cordero"), was at all times relevant to this complaint, a Registered Nurse licensed to practice nursing and medicine in the Commonwealth of Massachusetts with a business address at 10 Grove Street, East Boston, County of Suffolk, Commonwealth of Massachusetts 02128;

4. The Defendant, East Boston Neighborhood Health Center ("East Boston Health Center") has a principal place of business at 10 Grove Street, East Boston, County of Suffolk, Massachusetts 02128 was, at all times relevant to this complaint, a Health Center licensed to provide medical services and surgical services in the Commonwealth of Massachusetts.

5. The Defendant, Lauren E. Hanley, M.D.("Dr. Hanley"), was at all times relevant to this complaint, a Physician licensed to practice medicine in the Commonwealth of Massachusetts with a business address at 55 Fruit Street, Boston, County of Suffolk, Commonwealth of Massachusetts 02114;

6. The Defendant, Erin E. Tracy, M.D.("Dr. Tracy"), was at all times relevant to this complaint, a Physician licensed to practice medicine in the Commonwealth of Massachusetts with

a business address at 55 Fruit Street, Boston, County of
Suffolk, Commonwealth of Massachusetts 02114;

7.   The Defendant, Ronald I Iverson, M.D.("Dr. Iverson"), was
at all times relevant to this complaint, a Physician
licensed to practice medicine in the Commonwealth of
Massachusetts with a business address at 55 Fruit Street,
Boston, County of Suffolk, Commonwealth of Massachusetts
02114;

## COMMON OPERATIVE FACTS

8.   Mrs. Lara was diagnosed to be in the early stages of
pregnancy on November 13, 2002 by a nurse practitioner
working at the East Boston Health Center. Her last
menstrual period was uncertain because of irregular
menstrual cycles. A positive HCG test was diagnosed on
November 5, 2002.

9.   On November 14, 2002, Mrs. Lara was again evaluated by
Angela Acosta, R.N., a nurse employed by East Boston Health
Center and was given an appointment to see Nurse Cordero on
November 19, 2002.

10.  On November 19, 2002 Mrs. Lara had her first prenatal visit
at the East Boston Health Center with Nurse Cordero.
Obstetrical laboratory tests were obtained; no fetal heart
tones were diagnosed at the time.  Nurse Cordero ordered a
pelvic ultrasound. Mrs. Lara was weighted at 238 lbs. and
the blood pressure was measured at 138/82.

11.  An obstetrical ultrasound obtained on November 25, 2002 at
the East Boston Health Center diagnosed a single, living,

intrauterine pregnancy with an average gestational age
equaling approximately 11.3 weeks in duration.

12. A pelvic ultrasound obtained on December 2, 2002 at the
Massachusetts General Hospital diagnosed a single
intrauterine gestational sac containing a sonographically
normal fetus with a normal heart rate. Biometry was
reported as consistent with 13 weeks and 1 day and Mrs.
Lara was given an EDC (expected day of Confinement) of June
8, 2003.

13. On December 17, 2002, Mrs. Lara presented for another
prenatal visit to the East Boston Health Center. She was
diagnosed to be 15.3 weeks pregnant, her weight was
measured at 248 lbs., her blood pressure was 130/80. A
complete physical examination was performed. A second
pelvic ultrasound was ordered and an appointment given for
Mrs. Lara to be evaluated by Nurse Grabauskas (CNM,
Certified Nurse Midwife) for January 7, 2003.

14. On December 23, 2002, Mrs. Lara had her blood AFP (alpha
feto-protein) taken at approximately 16.1 weeks gestation.
A repeat ultrasound was ordered.

15. On January 6, 2003, a repeat pelvic ultrasound obtained at
the Massachusetts General Hospital confirmed a single
active intrauterine fetus; biometry was consistent with an
18.1 weeks intrauterine gestation.

16. On January 7, 2003, Mrs. Lara was evaluated at the East
Boston Health Center for a routine prenatal visit. The
examiner reported the following:

> (a) "Feels well, had sono and AFP yesterday. Discussed
> diet and possible gest DM. Will screen next week with
> 1 hr GTT and told pt she would be screened again at 28

5

weeks if this is nl. If this test is abnl she would be
tried on diet for regulation of gest DM pt
understands. rtc in 4 weeks."

17.  On February 5, 2003, Mrs. Lara was evaluated at the East
Boston Health Center for a prenatal follow up visit; the
examiner reported the following:

(a) "Denies vag bleeding reports + fetal kicking more
at night. c/o vag itching had a first trim resolved w
Terazol req rf on Terazol 7 given. Rev PTL
precautions, warnings signs FM. Rev prior lab and u/s
report PPD today, has appt w Nutrition in March. RTc
in 4 weeks w CNM/PRN

18.  On March 11, 2003, Mrs. Lara was evaluated at the East
Boston Health Center for a routine prenatal visit; the
examiner reported the following:

(a) "Feels well, reports active baby. Will do 3rd
trimester labs tomorrow, lab slip given to pt will
ordwer sono for interval growth as difficult to assess
fetal size due to body habitus. pt says her PPD was
neg. pt reports previous baby "small and was difficult
birth (forcep), "they had me prepared for a c-
section." Signed Tricia

19.  On March 19, 2003, Mrs. Lara was evaluated at the East
Boston Health Center for a routine prenatal visit. The
examiner reported the following:

20.  On March 26, 2003, Mrs. Lara was called to inform her that
she had an elevated 1 Hr GLT and the need for 3 Hrs GTT. A
message was left in her voicemail. A nurse Bonnie had
already spoken to Mrs. Lara about the need to follow up her
BS.

21. On April 8, 2003, Mrs. Lara was evaluated at the East Boston Health Center for a routine prenatal visit; the examiner reported the following:

(a) "Feels well, will see nutritionist today and start weekly visits for care. Will do FBS and 2 hr PP next visit to assess diet control of abnl GTT. Pt will start NST at 34 weeks, will have sonogram for interval growth and well being at 35 and 39 weeks. Consult Dr Tracy and reviewed labs." Signed Tricia

22. On April 16, 2003, Mrs. Lara was evaluated at the East Boston Health Center for a prenatal follow up visit; the examiner reported the following:

(a) "Denies vag bleeding leaking and ctx, reports good FM, c/o vag pressure, denies sxs of UTI urine dip neg, given Rx for Maternity support Belt, Rev PTL precautions warnings signs, daily FM, Did not have FBS/2Hrs PP. will go to lab tomorrow for FBS and 2 hrs PP. to book w FP couns. RTC in a wk w CNM/PRN

23. On April 22, 2003, Mrs. Lara was evaluated at the East Boston Health Center for a routine prenatal visit; the examiner reported the following:

(a) "Reviewed blood sugars with Dr Hanley. Pt needs to start checking her blood sugars at home while on diet for one week to assess CHO metabolism. Will set up teaching with RN. Pt will start NST's next visit. Reports active baby." Signed Tricia

24. On May 5, 2003, Mrs. Lara was evaluated at the East Boston Health Center for glucometer teaching; the examiner reported the following:

7

(a) " Pt. very anxious about "sticking myself w/needles." Pt. able to return demonstration w/glucometer. Discussed NL values for BS. Pt. requires a lot of reassurance regarding finger sticks. Pt. uncertain about returning RN visit, wants to speak w/provider this Wed. Pt. to CB w/concerns or ?'s pm. Pt. verbalized understanding."

25. On May 7, 2003, Mrs. Lara was evaluated at the East Boston Health Center for a prenatal follow up visit and NST [non stress test]; the examiner reported the following:

(a) "Denies vag bleeding reports lot of FM [fetl movements], req ref on terazol 7 and PN [prenatal] vits [vitamins], non reactive NST [non stress test] sent for BPP [biophysical profile], also FBS and 2 Hrs PP all per cons to Dr Iverson. GBS done. DOING GLUCOMTER bs CHECK AT HOME ALL fbs LESS THAN 100 AND 2Hrs PP LESS THAN 120 BUT 1 OF 124.. sent for BPP today. TO BOOK W nutrition for ASAP, has appt w FP couns today. RTC IN A WK W CNM/PRN."

26. On May 13, 2003, Mrs. Lara was evaluated at the East Boston Health Center for a routine prenatal visit; the examiner reported the following:

(a) "Reviewed FBS [fasting blood sugar] and 2 hr PP [post prandial] bld sugars for this wk—mostly WNL [within normal limits]. FBS today=123. 3+ glucose in urine today. Pt says "cheated last noc on diet". NST [non stress test] today nonreactive with one variable from 150's baseline to 120's. Consult with Dr Hanley- pt to MGH [Massachusetts General Hospital] for BPP [biophysical profile] and EFW [estimated fetal

weight]. Rtc [return to clinic] in one wk as planned."
Signed Tricia

27. On May 22, 2003, Mrs. Lara was evaluated at the East Boston
Health Center for a routine prenatal visit and for a NST
(non stress test); the examiner reported the following:

(a) "Denies vag bleeding, leaking and ctx
(contractions), reports good FM (fetal movement) urine
dip neg but + nitrite denies sxs (symptoms) of uti
(urinary tract infection) rev w Dr. Iverson. Reactive
NST, to sent for U/A, C [culture] & sens [sensitivity]
(urianalysis, culture and sensitivity) to call for
results, Rev + vag GBS and need for antibiotic on
labor rev labor precautions warnings signs daily FM,
cont w BS check w glucometer all FBS less than 100 and
all 2 Hrs PP less than 120. RTC (return to clinic) in
1 wk w CNM for PN care and NST/PRN." The fetal heart
tones were diagnosed as present.

28. On May 27, 2003, Mrs. Lara was evaluated at the East Boston
Health Center for a routine prenatal visit; the examiner
reported the following:

(a) "Glucose testing was reviewed, all BS [blood sugar]
are WNL [within normal limits] for FBS [fasting blood
sugar and 2 hr PP [post prandial]. Pt reports fetal
activity, unable to do a NST [non stress test] due to
pt habitus, sent for BPP [biophysical profile] today."
The fetal heart tones were diagnosed as present.
Signed Tricia

29. On May 27, 2003, Mrs. Lara was referred to the
Massachusetts General Hospital for a Biophysical Profile
because of the inability to obtain a Non-Stress test at the

East Boston Health Center. The Biophysical Profile was
reported as:

> (a) "Examination of the uterus reveals a single fetus in
> vertex presentation with a posterior placenta. The
> amniotic fluid volume appears normal. There is no
> fetal motion and no fetal heart motion. There is
> evidence of maceration. The midwifery service was
> informed and the patient was brought to labor and
> delivery." Signed by: Allan S. Nadel (radiologist).

30. Mrs. Lara was admitted to the Massachusetts General
Hospital's Labor and Delivery on May 27, 2003  with a
diagnosis of Intrauterine Fetal Demise and under epidural
anesthesia delivered a 38 week old, male infant stillborn
infant weighing 3519 grams. Mrs. Lara was discharged from
the Massachusetts General Hospital on May 28, 2003.

31. In violation of the duty owed to Mrs. Lara and Jose Angel
Lara, the Defendant Patricia Grabauskas, C.N.M.,
negligently cared for and treated Mrs. Lara and Jose Angel
Lara and/or failed to care and treat them such that (baby
boy) Jose Angel Lara was caused to sustain severe personal
injuries that led to his death in-utero and stillbirth.

32. In violation of the duty owed to Mrs. Lara and Jose Angel
Lara, the Defendant Olga Cordero, R.N., negligently cared
for and treated Mrs. Lara and (baby boy) Jose Angel Lara
and/or failed to care and treat them such that Jose Angel
Lara was caused to sustain severe personal injuries that
led to his death in-utero and stillbirth.

33. In violation of the duty owed to Mrs. Lara and Jose Angel
Lara, the Defendant East Boston Health Center, by and
through its agents, servants or employees or persons for

10

whose conduct it was responsible, negligently cared for and treated Mrs. Lara and (baby boy) Jose Angel Lara and/or failed to care and treat them such that Jose Angel Lara was caused to sustain severe personal injuries that led to his death in-utero and stillbirth.

## COUNT I
### (Patricia Grabauskas, C.N.M., Negligence – Wrongful Death)

34.  The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby repeats, realleges and incorporates fully herein Paragraphs One through Thirty-three inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

35.   At all times relevant to this complaint, the Defendant, Patricia Grabauskas, C.N.M., represented and held herself out to be skilled in the treatment of various illnesses and conditions in the field of Obstetrics and, in particular, represented to Anne Marie Lara that she was knowledgeable, competent and qualified to diagnose and treat Anne Marie Lara and her pregnancy on or about November of 2002 and thereafter.

36.  On or about November of 2002 and thereafter, Mrs. Lara submitted herself to the care and treatment of the Defendant, Patricia Grabauskas, C.N.M., who negligently and carelessly and without regard for her health and well-being or that of (baby boy) Jose Angel Lara, treated said Anne

Marie Lara in a manner which resulted in severe personal injuries and the death of her singleton male-pregnancy.

37. The injuries sustained by Mrs. Lara were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the Defendant, Patricia Grabauskas, C.N.M.,  including but not limited to the following:

   a.  her misrepresentations to Mrs. Lara, on or about November of 2002 and thereafter, that she was knowledgeable, skillful and competent to diagnose, manage and treat Mrs. Lara's diabetic pregnancy;

   b.  her failure, on or about November of 2002 and thereafter, to adequately and properly diagnose and manage the medical condition of Mrs. Lara, and her failure to properly treat said condition;

   c.  her failure to recognize, or to have the knowledge to recognize, her inability and lack of skill to treat Mrs. Lara, when she knew or should have known of the foreseeable consequences of her inability and failure to properly and skillfully provide Mrs. Lara with acceptable medical care and treatment;

   d.  her failure to exercise the degree of care, skill and judgment expected of a competent medical practitioner acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the severity of Mrs. Lara 's condition, careful diagnosis of such condition, employment of appropriate personnel, procedures, surgery and/or treatment to correct such conditions without injury upon Mrs. Lara and her singleton-pregnancy, continuous evaluation and the effects of such treatment, and adjustment of the course of treatment in response to such

> ongoing surveillance and evaluation, all of which
> Defendant failed to do;
>
> e.  her failure to possess and exercise that degree
>     of skill, training and care as is possessed and
>     exercised by the average qualified members of the
>     medical profession practicing her specialty;
>
> f.  her failure to inform and to warn of the risks
>     involved in or associated with Mrs. Lara 's
>     condition and failure to inform and to warn her
>     about the treatment of said condition.

38. As a direct and proximate result of the negligence, carelessness and unskillfulness of the Defendant, Patricia Grabauskas, C.N.M., Mrs. Lara, was caused to sustain severe and permanent personal injuries including the death of her singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant, Patricia Grabauskas, C.N.M., in an amount which is just and appropriate to compensate for the wrongful death of the said minor child, Jose Angel Lara, together with interest and costs.

## COUNT II

## (Patricia Grabauskas, C.N.M. – Gross Negligence – Wrongful Death)

39. The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby, repeats, realleges and incorporates fully herein Paragraphs One through Thirty-eight inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

40.  As a direct and proximate result of the gross negligence,
     carelessness and unskillfulness of the Defendant, Patricia
     Grabauskas, C.N.M., Mrs. Lara was caused to sustain severe
     and permanent personal injuries including the death of one
     of her singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Patricia Grabauskas, C.N.M., for punitive damages in causing the
death of Jose Angel Lara by her gross negligence in accordance
with the provisions of M.G.L. c. 229, as amended and applicable
at times material herein, in an amount which is just and
appropriate to compensate for Jose Angel Lara's death, together
with interest and costs.


<u>**COUNT III**</u>

<u>**(Olga Cordero, R.N., Negligence – Wrongful Death)**</u>

41.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Forty inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

41.   At all times relevant to this complaint, the Defendant,
     Olga Cordero, R.N., represented and held herself out to be
     skilled in the treatment of various illnesses and
     conditions in the field of Obstetrics and, in particular,
     represented to Anne Marie Lara that she was knowledgeable,
     competent and qualified to diagnose and treat Anne Marie

Lara and her pregnancy on or about November of 2002 and thereafter.

42. On or about November of 2002 and thereafter, Mrs. Lara submitted herself to the care and treatment of the Defendant, Olga Cordero, R.N., who negligently and carelessly and without regard for her health and well-being or that of (baby boy) Jose Angel Lara, treated the said Anne Marie Lara in a manner which resulted in severe personal injuries and the death of her singleton male-pregnancy.

43. The injuries sustained by Mrs. Lara were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the Defendant, Olga Cordero, R.N. including but not limited to the following:

  a. her misrepresentations to Mrs. Lara, on or about November of 2002 and thereafter, that she was knowledgeable, skillful and competent to diagnose, manage and treat Mrs. Lara's twin-pregnancy;

  b. her failure, on or about November of 2002 and thereafter, to adequately and properly diagnose and manage the medical condition of Mrs. Lara, and her failure to properly treat said condition;

  c. her failure to recognize, or to have the knowledge to recognize, her inability and lack of skill to treat Mrs. Lara, when she knew or should have known of the foreseeable consequences of her inability and failure to properly and skillfully provide Mrs. Lara with acceptable medical care and treatment;

  d. her failure to exercise the degree of care, skill and judgment expected of a competent medical

practitioner acting in the same or similar
circumstances, which duty included the
performance of adequate and proper diagnostic
tests and procedures to determine the severity of
Mrs. Lara 's condition, careful diagnosis of such
condition, employment of appropriate procedures,
surgery and/or treatment to correct such
conditions without injury upon Mrs. Lara and her
singleton-pregnancy, continuous evaluation and
the effects of such treatment, and adjustment of
the course of treatment in response to such
ongoing surveillance and evaluation, all of which
Defendant failed to do;

e.    her failure to possess and exercise that degree
of skill, training and care as is possessed and
exercised by the average qualified members of the
medical profession practicing her specialty;

f.    her failure to inform and to warn of the risks
involved in or associated with Mrs. Lara 's
condition and failure to inform and to warn her
about the treatment of said condition.

44.   As a direct and proximate result of the negligence,
carelessness and unskillfulness of the Defendant, Olga
Cordero, R.N., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of her
singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Olga Cordero, R.N., in an amount which is just and appropriate
to compensate for the wrongful death of the said minor child,
Jose Angel Lara, together with interest and costs.

<u>**COUNT IV**</u>

**(Olga Cordero, R.N. – Gross Negligence – Wrongful Death)**

45. The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby repeats, realleges and incorporates fully herein Paragraphs One through Forty-four inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

46. As a direct and proximate result of the gross negligence, carelessness and unskillfulness of the Defendant, Olga Cordero, R.N., Mrs. Lara, was caused to sustain severe and permanent personal injuries including the death of one of her singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant, Olga Cordero, R.N., for punitive damages in causing the death of Jose Angel Lara by her gross negligence in accordance with the provisions of M.G.L. c. 229, as amended and applicable at times material herein, in an amount which is just and appropriate to compensate them for Jose Angel Lara's death, together with interest and costs.

<u>COUNT V</u>

<u>(East Boston Neighborhood Health Center – Negligence – Wrongful
Death)</u>

47.  The Plaintiff, Anne Marie Lara, as the duly appointed
     Administratrix of the Estate of Jose Angel Lara, hereby
     repeats, realleges and incorporates fully herein Paragraphs
     One through Forty-six inclusive of this Complaint as if
     specifically set forth herein, paragraph by paragraph, word
     by word.

48.  At all times relevant to this Complaint, The Plaintiff
     alleges that East Boston Neighborhood Health Center through
     its agents, servants and employees, owed Mrs. Lara and her
     pregnancy a duty to exercise a degree of care, skill and
     judgment expected of a competent medical corporation acting
     in the same or similar circumstances, which duty included
     the performance of adequate and proper diagnostic tests and
     procedures to determine the nature and severity of the
     Plaintiff's condition, careful diagnosis of such condition,
     employment of appropriate personnel, procedures, tests,
     surgery and/or treatment to correct such conditions without
     inflicting injury upon Anne Marie Lara and her pregnancy,
     all of which the Defendant's agents, servants and employees
     failed to do on or about November 2002 and thereafter.

49.  On or about November of 2002 and thereafter, Mrs. Lara
     submitted herself to the care and treatment of East Boston
     Neighborhood Health Center, its agents, servants and
     employees.  The Plaintiff alleges that East Boston
     Neighborhood Health Center through its agents, servants and
     employees, owed Mrs. Lara and her pregnancy a duty to
     exercise a degree of care, skill and judgment expected of a

18

competent medical corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Mrs. Lara's condition, careful diagnosis of such condition, employment of appropriate personnel, procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury upon Mrs. Lara and her pregnancy, continuous evaluation of her condition and effects of such treatment, and the adjustment of the course of treatment in response to ongoing surveillance and evaluation,  all of which the Defendant's agents, servants and employees failed to do and who negligently and carelessly and without regard for Mrs. Lara's health and well-being, treated Mrs. Lara and baby boy Jose Angel Lara in a manner which resulted in severe personal injuries to Mrs. Lara and Jose Angel Lara, and ultimately the death of one of her singleton male-pregnancy in November, 2002.

50. East Boston Neighborhood Health Center through its agents, servants and/or employees, was negligent in that it failed to employ appropriate personnel, treatment, surgery and/or procedures, failed to carefully and thoroughly evaluate Mrs. Lara's condition, failed to thoroughly evaluate the effects and results of any tests, treatment and/or procedures performed, failed to adjust Mrs. Lara's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of Mrs. Lara's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of Mrs. Lara's condition, failed to diagnose the Mrs. Lara's condition and was

otherwise negligent, including but not limited to the following:

    a.    On or about November of 2002 and thereafter, Mrs. Lara presented to Defendant's medical facility requesting evaluation and management of her medical condition, including abdominal pain;

    b.    During the prenatal visits between November of 2002 and May 2003 and thereafter, Mrs. Lara, continued to be evaluated and treated by Defendants, Patricia Grabauskas, C.N.M. and Olga Cordero, R.N. and was not referred to an obstetrician for care and treatment for her high risk condition;

    c.    Defendant's agents, servants and employees acknowledged Mrs. Lara's complaints and treated her without performing the necessary tests, evaluations and referral to an obstetrician to obtain a diagnosis for Mrs. Lara's symptoms. No testing nor diagnostic evaluations for a patient situated in conditions similar to that of Mrs. Lara were conducted;

    d.    Defendant's agents, servants and employees proceeded to discourage Mrs. Lara from obtaining the necessary testing, diagnostic evaluations and referral to an obstetrician for a patient situated in conditions similar to that of Mrs. Lara;

    e.    Relying on the recommendations of Defendant's agents, servants and employees, who were Mrs. Lara's caregivers, Mrs. Lara followed Defendant's agents, servants and employees recommendations

20

and did not have the necessary testing,
diagnostic evaluations and referral to an
obstetrician which her condition required;

51.  The injuries sustained by Mrs. Lara and Jose Angel Lara,
were the direct and proximate result of the carelessness,
unskillfulness, negligence and improper care and treatment
by East Boston Neighborhood Health Center's agents,
servants and employees, including but not limited to the
following:

   a.  its misrepresentations to Mrs. Lara that through
       its agents, servants and employees, it was
       knowledgeable, skillful and competent to diagnose
       and treat her and her pregnancy on or about
       November of 2002 and thereafter;

   b.  its failure through its agents, servants and
       employees, to adequately and properly diagnose
       the medical condition of Mrs. Lara and her
       pregnancy on or about November of 2002 and
       thereafter, and its failure to properly treat
       said condition;

   c.  its failure through its agents, servants and
       employees, to recognize, or to have the knowledge
       to recognize its inability and lack of skill to
       treat Mrs. Lara and her pregnancy, when it knew
       or should have known of the foreseeable
       consequences of its inability and failure
       properly and skillfully to provide her with
       acceptable medical care and treatment;

   d.  its failure through its agents, servants and
       employees, to exercise the degree of care, skill

and judgment expected of a competent medical
practitioner acting in the same or similar
circumstances, which duty included the
performance of adequate and proper diagnostic
tests and procedures to determine the severity of
the Plaintiff's condition, careful diagnosis of
such condition, employment of appropriate
personnel, procedures, surgery and/or treatment
to correct such conditions without injury upon
Mrs. Lara and her pregnancy, continuous
evaluation and the effects of such treatment, and
adjustment of the course of treatment in response
to such ongoing surveillance and evaluation, all
of which the Defendant through its agents,
servants and employees failed to do;

e.   its failure through its agents, servants and
employees, to possess and exercise that degree of
skill, training and care as is possessed and
exercised by the average qualified members of the
medical profession practicing their specialty;

f.   its failure through its agents, servants and
employees, to inform and to warn of the risks
involved in or associated with the Mrs. Lara's
condition and failure to inform and to warn about
the treatment of said condition.

52.   As a direct and proximate result of the negligence,
carelessness and unskillfulness of East Boston Neighborhood
Health Center's agents, servants and employees, Mrs. Lara
was caused to sustain severe and permanent personal

injuries, which ultimately led to the death of Jose Angel
Lara, her singleton male-pregnancy in May, 2003.

WHEREFORE, the Plaintiff demands judgment against the Defendant,
East Boston Neighborhood Health Center, in an amount which is
just and appropriate to compensate for the wrongful death of the
said minor child, Jose Angel Lara, together with interest and
costs.

## COUNT VI
## (East Boston Neighborhood Health Center – Gross Negligence – Wrongful Death)

53. The Plaintiff, Anne Marie Lara, as the duly appointed
    Administratrix of the Estate of Jose Angel Lara, hereby
    repeats, realleges and incorporates fully herein Paragraphs
    One through Fifty-two inclusive of this Complaint as if
    specifically set forth herein, paragraph by paragraph, word
    by word.

54. As a direct and proximate result of the gross negligence,
    carelessness and unskillfulness of the Defendant, East
    Boston Neighborhood Health Center, Mrs. Lara was caused to
    sustain severe and permanent personal injuries including
    the death of Jose Angel Lara, her singleton male-pregnancy.

WHEREFORE, the Plaintiff, demands judgment against the
Defendant, East Boston Neighborhood Health Center, for punitive
damages in causing the death of Jose Angel Lara by its gross

negligence in accordance with the provisions of M.G.L. c. 229, as amended and applicable at times material herein, in an amount which is just and appropriate to compensate for Jose Angel Lara's death, together with interest and costs.


## COUNT VII

### (Lauren E. Hanley, M.D., Negligence - Wrongful Death)

55.  The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby repeats, realleges and incorporates fully herein Paragraphs One through Fifty-four inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

56.   At all times relevant to this complaint, the Defendant, Lauren E. Hanley, M.D., represented and held herself out to be skilled in the treatment of various illnesses and conditions in the field of Obstetrics and, in particular, represented to Anne Marie Lara that she was knowledgeable, competent and qualified to diagnose and treat Anne Marie Lara and her pregnancy on or about November of 2002 and thereafter.

57.  On or about November of 2002 and thereafter, Mrs. Lara submitted herself to the care and treatment of the Defendant, Lauren E. Hanley, M.D., who negligently and carelessly and without regard for her health and well-being, treated the said Anne Marie Lara in a manner which resulted in severe personal injuries and the death of her singleton male-pregnancy.

58.    The injuries sustained by Mrs. Lara were the direct and
       proximate result of the carelessness, unskillfulness,
       negligence and improper care and treatment by the
       Defendant, Lauren E. Hanley, M.D.,  including but not
       limited to the following:

      a.    her misrepresentations to Mrs. Lara, on or about
             November of 2002 and thereafter, that she was
             knowledgeable, skillful and competent to diagnose
             and treat Mrs. Lara's diabetic pregnancy;

      b.    her failure, on or about November of 2002 and
             thereafter, to adequately and properly diagnose
             the medical condition of Mrs. Lara, and her
             failure to properly treat said condition;

      c.    her failure to recognize, or to have the
             knowledge to recognize, her inability and lack of
             skill to treat Mrs. Lara, when she knew or should
             have known of the foreseeable consequences of her
             inability and failure to properly and skillfully
             provide Mrs. Lara with acceptable medical care
             and treatment;

      d.    her failure to exercise the degree of care, skill
             and judgment expected of a competent medical
             practitioner acting in the same or similar
             circumstances, which duty included the
             performance of adequate and proper diagnostic
             tests and procedures to determine the severity of
             Mrs. Lara 's condition, careful diagnosis of such
             condition, employment of appropriate procedures,
             surgery and/or treatment to correct such
             conditions without injury upon Mrs. Lara and her
             singleton-pregnancy, continuous evaluation and
             the effects of such treatment, and adjustment of
             the course of treatment in response to such
             ongoing surveillance and evaluation, all of which
             Defendant failed to do;

      e.    her failure to possess and exercise that degree
             of skill, training and care as is possessed and

exercised by the average qualified members of the
medical profession practicing her specialty;

f.    her failure to inform and to warn of the risks
involved in or associated with Mrs. Lara 's
condition and failure to inform and to warn her
about the treatment of said condition.

59.  As a direct and proximate result of the negligence,
carelessness and unskillfulness of the Defendant, Lauren E.
Hanley, M.D., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of her
singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Lauren E. Hanley, M.D., in an amount which is just and
appropriate to compensate for the wrongful death of the said
minor child, Jose Angel Lara, together with interest and costs.

## COUNT VIII

### (Lauren E. Hanley, M.D. – Gross Negligence – Wrongful Death)

60.  The Plaintiff, Anne Marie Lara, as the duly appointed
Administratrix of the Estate of Jose Angel Lara, hereby
repeats, realleges and incorporates fully herein Paragraphs
One through Fifty-nine inclusive of this Complaint as if
specifically set forth herein, paragraph by paragraph, word
by word.

61.  As a direct and proximate result of the gross negligence,
carelessness and unskillfulness of the Defendant, Lauren E.
Hanley, M.D., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of her
singleton male-pregnancy.

26

**WHEREFORE**, the Plaintiff demands judgment against the Defendant, Lauren E. Hanley, M.D., for punitive damages in causing the death of Jose Angel Lara by her gross negligence in accordance with the provisions of M.G.L. c. 229, as amended and applicable at times material herein, in an amount which is just and appropriate to compensate for Baby (Boy) Jose Angel Lara's death, together with interest and costs.

## COUNT IX
### (Erin E. Tracy, M.D., Negligence – Wrongful Death)

62. The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby repeats, realleges and incorporates fully herein Paragraphs One through Sixty-one inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

63. At all times relevant to this complaint, the Defendant, Erin E. Tracy, M.D., represented and held herself out to be skilled in the treatment of various illnesses and conditions in the field of Obstetrics and, in particular, represented to Anne Marie Lara that she was knowledgeable, competent and qualified to diagnose and treat Anne Maria Lara and her pregnancy on or about November of 2002 and thereafter.

64. On or about November of 2002 and thereafter, Mrs. Lara submitted herself to the care and treatment of the

27

Defendant, Erin E. Tracy, M.D., who negligently and carelessly and without regard for her health and well-being, treated the said Anne Marie Lara in a manner which resulted in severe personal injuries and the death of her singleton male-pregnancy.

65. The injuries sustained by Mrs. Lara were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the Defendant, Erin E. Tracy, M.D., including but not limited to the following:

   a.   her misrepresentations to Mrs. Lara, on or about November of 2002 and thereafter, that he was knowledgeable, skillful and competent to diagnose and treat Mrs. Lara's diabetic pregnancy;

   b.   her failure, on or about November of 2002 and thereafter, to adequately and properly diagnose the medical condition of Anne Marie Lara, and her failure to properly treat said condition;

   c.   her failure to recognize, or to have the knowledge to recognize, his inability and lack of skill to treat Mrs. Lara, when she knew or should have known of the foreseeable consequences of her inability and failure to properly and skillfully provide Mrs. Lara with acceptable medical care and treatment;

   d. her failure to exercise the degree of care, skill and judgment expected of a competent medical practitioner acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the severity of Mrs. Lara 's condition, careful diagnosis of such condition, employment of appropriate procedures, surgery and/or treatment to correct such conditions without injury upon Mrs. Lara and her singleton-pregnancy, continuous evaluation and the effects of such

28

treatment, and adjustment of the course of treatment
in response to such ongoing surveillance and
evaluation, all of which Defendant failed to do;

e. her failure to possess and exercise that degree of
skill, training and care as is possessed and
exercised by the average qualified members of the
medical profession practicing her specialty;

f. her failure to inform and to warn of the risks
involved in or associated with Mrs. Lara 's
condition and failure to inform and to warn her
about the treatment of said condition.

66.  As a direct and proximate result of the negligence,
carelessness and unskillfulness of the Defendant, Erin E.
Tracy, M.D., Mrs. Lara, was caused to sustain severe and
permanent personal injuries including the death of her
singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant,
Erin E. Tracy, M.D., in an amount which is just and appropriate
to compensate for the wrongful death of the said minor child,
Jose Angel Lara, together with interest and costs.

## COUNT X
### (Erin E. Tracy, M.D. – Gross Negligence – Wrongful Death)

67.  The Plaintiff, Anne Marie Lara, as the duly appointed
Administratrix of the Estate of Jose Angel Lara, hereby
repeats, realleges and incorporates fully herein Paragraphs
One through Sixty-six inclusive of this Complaint as if
specifically set forth herein, paragraph by paragraph, word
by word.

68. As a direct and proximate result of the gross negligence, carelessness and unskillfulness of the Defendant, Erin E. Tracy, M.D., Mrs. Lara, was caused to sustain severe and permanent personal injuries including the death of her singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant, Erin E. Tracy, M.D., for punitive damages in causing the death of Jose Angel Lara by her gross negligence in accordance with the provisions of M.G.L. c. 229, as amended and applicable at times material herein, in an amount which is just and appropriate to compensate for Baby (Boy) Jose Angel Lara's death, together with interest and costs.

## COUNT XI
### (Ronald E. Iverson, M.D., Negligence – Wrongful Death)

69. The Plaintiff, Anne Marie Lara, as the duly appointed Administratrix of the Estate of Jose Angel Lara, hereby repeats, realleges and incorporates fully herein Paragraphs One through Sixty-eight inclusive of this Complaint as if specifically set forth herein, paragraph by paragraph, word by word.

70.  At all times relevant to this complaint, the Defendant, Ronald E. Iverson, M.D., represented and held himself out to be skilled in the treatment of various illnesses and conditions in the field of Obstetrics and, in particular, represented to the Plaintiff that he was knowledgeable,

competent and qualified to diagnose and treat Anne Marie
Lara and her pregnancy on or about November of 2002 and
thereafter.

71. On or about November of 2002 and thereafter, Mrs. Lara
submitted herself to the care and treatment of the
Defendant, Ronald E. Iverson, M.D., who negligently and
carelessly and without regard for her health and well-
being, treated the said Anne Marie Lara in a manner which
resulted in severe personal injuries and the death of her
singleton male-pregnancy.

72. The injuries sustained by Mrs. Lara were the direct and
proximate result of the carelessness, unskillfulness,
negligence and improper care and treatment by the
Defendant, Ronald E. Iverson, M.D.,  including but not
limited to the following:

    a.   his misrepresentations to Mrs. Lara, on or about
        November of 2002 and thereafter, that he was
        knowledgeable, skillful and competent to diagnose
        and treat Mrs. Lara's diabetic pregnancy;

    b.   his failure, on or about November of 2002 and
        thereafter, to adequately and properly diagnose
        the medical condition of Mrs. Lara, and his
        failure to properly treat said condition;

    c.   his failure to recognize, or to have the
        knowledge to recognize, his inability and lack of
        skill to treat Mrs. Lara, when he knew or should
        have known of the foreseeable consequences of his
        inability and failure to properly and skillfully
        provide Mrs. Lara with acceptable medical care
        and treatment;

    d.   his failure to exercise the degree of care, skill
        and judgment expected of a competent medical
        practitioner acting in the same or similar
        circumstances, which duty included the
        performance of adequate and proper diagnostic

tests and procedures to determine the severity of Mrs. Lara 's condition, careful diagnosis of such condition, employment of appropriate procedures, surgery and/or treatment to correct such conditions without injury upon Mrs. Lara and her singleton-pregnancy, continuous evaluation and the effects of such treatment, and adjustment of the course of treatment in response to such ongoing surveillance and evaluation, all of which Defendant failed to do;

e.  his failure to possess and exercise that degree of skill, training and care as is possessed and exercised by the average qualified members of the medical profession practicing his specialty;

f.  his failure to inform and to warn of the risks involved in or associated with Mrs. Lara 's condition and failure to inform and to warn her about the treatment of said condition.

73. As a direct and proximate result of the negligence, carelessness and unskillfulness of the Defendant, Ronald E. Iverson, M.D., Mrs. Lara, was caused to sustain severe and permanent personal injuries including the death of one of her singleton male-pregnancy.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant, Ronald E. Iverson, M.D., in an amount which is just and appropriate to compensate for the wrongful death of the said minor child, Jose Angel Lara, together with interest and consts.

## COUNT XII

## (Ronald E. Iverson, M.D. – Gross Negligence – Wrongful Death)

74. The Plaintiff, Anne Marie Lara, as the duly appointed
    Administratrix of the Estate of Jose Angel Lara, hereby
    repeats, realleges and incorporates fully herein Paragraphs
    One through Seventy-three inclusive of this Complaint as if
    specifically set forth herein, paragraph by paragraph, word
    by word.

75. As a direct and proximate result of the gross negligence,
    carelessness and unskillfulness of the Defendant, Ronald E.
    Iverson, M.D., Mrs. Lara was caused to sustain severe and
    permanent personal injuries including the death of her
    singleton male-pregnancy.

**WHEREFORE**, the Plaintiff, demands judgment against the

Defendant, Ronald E. Iverson, M.D., for punitive damages in

causing the death of Jose Angel Lara by his gross negligence in

accordance with the provisions of M.G.L. c. 229, as amended and

applicable at times material herein, in an amount which is just

and appropriate to compensate for the wrongful death of the said

minor child, Jose Angel Lara, together with interest and costs.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

ANNE MARIE LARA Administratrix of the
Estate of Baby (boy) Jose Angel Lara
By their attorneys,


/s/Max Borten, M.D., J.D.
Max Borten, M.D., J.D.
GOROVITZ & BORTEN, P.C.
395 Totten Pond Road, Suite 401
Waltham, MA 02451
(781) 890-9095


**Dated:** February 22, 2006